956 F.2d 272
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene Earl BENTLEY, Defendant-Appellant.
 No. 91-2820.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 24, 1992.
Decided Feb. 28, 1992.
 
 Before BAUER, Chief Circuit Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 On March 14, 1989, defendant-appellant Eugene Earl Bentley robbed the Union Federal Savings and Loan in Milan, Illinois, taking over $13,000 in cash. In the course of the grand jury investigation, the authorities asked Bentley to stand in a lineup. After eyewitnesses identified Bentley as the robber, the grand jury charged him with aggravated bank robbery, in violation of 18 U.S.C. § 2113(d), possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The district court denied the defendant's motion to suppress the lineup identifications. The jury returned guilty verdicts on all three counts.
 
 
 2
 On appeal, Bentley raises three challenges to his conviction and sentence: (1) that the government violated his Sixth Amendment when it placed him in a lineup without providing the advice of counsel; (2) that the district court abused its discretion by admitting the testimony of Bentley's parole officer; and (3) that the government failed to meet its burden of proof as to the existence of Bentley's three prior convictions for sentence enhancement purposes under 18 U.S.C. § 924(e). None of these claims persuade us. On the contrary, Bentley's arguments fail in light of well-settled law.
 
 
 3
 First, the district court committed no error when it denied Bentley's motion to suppress the lineup identifications. The defendant's right to counsel attaches when the prosecution becomes aligned against the accused. See United States v. Wade, 388 U.S. 218, 235 (1967). In Kirby v. Illinois, 406 U.S. 682, 689 (1972), the Supreme Court held that this rule does not apply to confrontations before the commencement of formal criminal proceedings. Kirby identified five specific "starting points" when the right to counsel is implicated: "formal charge, preliminary hearing, indictment, information, or arraignment." Id. See also Moore v. Illinois, 434 U.S. 220, 227-232 (1977).
 
 
 4
 In the instant appeal, it is clear that the pre-indictment lineup was part of the investigation of the case, not its prosecution. The facts demonstrate that the government legitimately was investigating the robbery, and had not yet made a decision to bring formal charges against Bentley. Thus, there was no constitutional right to the appointment of counsel. See United States ex rel Hall v. Lane, 804 F.2d 79, 81 (7th Cir.1986), cert. denied, 480 U.S. 921 (1987). Bentley's Sixth Amendment challenge fails.
 
 
 5
 Second, the district court did not abuse its discretion when it admitted the testimony of Bentley's parole officer. The district court reasoned that the probative value of the officer's testimony outweighed the possibility of undue prejudice. See Fed.R.Evid. 403. The officer testified the he granted Bentley's request for a permit to travel to Davenport, Iowa, during the period of March 12 through March 15, 1989. The officer also testified that he would not have granted the permit had he known that one Randy Krana resided with the friends Bentley wished to visit. Bentley claims that the officer's testimony had no relevant connection to the issues the jury had to consider. Instead, Bentley argues, the testimony simply brought to the jury's attention that the defendant was on parole or probation at the time of the robbery.
 
 
 6
 We disagree. The government introduced the evidence to establish the defendant's presence in the vicinity of the bank at the time of the robbery and, more importantly, to show that the defendant used deception to obtain permission to travel. This evidence of deception provided the jury with a more complete picture of Bentley's scheme to commit the crime. Such evidence is relevant if its exclusion would leave a chronological and conceptual void in the story. United States v. Vretta, 790 F.2d 651, 656 (7th Cir.), cert. denied, 479 U.S. 851 (1986). The district court made every effort to ensure that the officer testified only to relevant matters. The district court excluded from evidence the actual travel permit (because it contained references to the United States Federal Probation Office), any mention of Bentley's parole status, and the information that Randy Krana was a convicted felon. The district court even permitted the government to ask leading questions during direct examination in order to preclude the officer from using the term "parole." Instead, the officer testified that Bentley was under supervision.
 
 
 7
 Moreover, possibly the most prejudicial inference that the jury could draw from the officer's testimony--that Bentley had a prior criminal record justifying supervision--was a fact known to the jury as an essential element of proof for the weapons charge. The jury properly received a stipulation that Bentley had a prior felony conviction which subjected him to 18 U.S.C. § 922(g)'s prohibition against his possession of firearms. This submission to the jury substantially reduced the prejudicial impact of the parole officer's testimony. In this way, the district court struck the proper balance between the admission of relevant evidence and unfair prejudice. It was, therefore, no abuse of discretion to admit the officer's testimony.
 
 
 8
 Finally, Bentley argues that the government failed to satisfy its burden to prove the constitutional validity of Bentley's prior convictions for the purposes of enhancing his sentence. Prior to the trial, the government filed an information placing Bentley on notice that because he had at least three prior violent felony convictions, the government would seek to enhance Bentley's sentence. In order to enhance a sentence due to prior convictions, the government must prove that those prior convictions were constitutionally valid. United States v. Henry, 933 F.2d 553, 559 (7th Cir.1991). At the sentencing hearing, the government submitted certified copies of Bentley's prior convictions for residential burglary. While Bentley does not challenge the authenticity of the certified copies, he argues that their submission was insufficient to prove the validity of those convictions.
 
 
 9
 Bentley's claim is wholly without merit. The government's burden to prove the validity of a prior convictions initially may be satisfied by the introduction of certified copy evidencing that conviction. United States v. Taylor, 882 F.2d 1018, 1031 (6th Cir.1989). The burden then shifts to the defendant to show that the conviction is invalid. Id. In the instant case, Bentley offered no evidence to challenge his prior convictions. The district court thus found that the prior convictions were valid and sentenced Bentley accordingly. We see no error in that determination.
 
 
 10
 For the foregoing reasons, the conviction and sentence of Eugene Earl Bentley are
 
 
 11
 AFFIRMED.